Katherine S. Huso
Ryan J. Gustafson
MATOVICH, KELLER & HUSO, P.C.
2812 1st Avenue North, Suite 225
P.O. Box 1098
Billings, MT  59103-1098
(406) 252-5500 Phone
(406) 252-4613 Fax
khuso@mkhattorneys.com
rgustafson@mkhattorneys.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| IRONSHORE SPECIALTY INSURANCE COMPANY,<br><br>       Plaintiff,<br><br>   vs.<br><br>MIDWEST FAMILY MUTUAL INSURANCE COMPANY,<br><br>       Defendant. | Cause No. _____<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT** |

Plaintiff Ironshore Specialty Insurance Company ("Ironshore"), through its counsel of record, brings this action under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, against Midwest Family Mutual Insurance Company ("Midwest"), alleging as follows:

## NATURE OF THE ACTION

1. This is an action for declaratory relief relating to insurance coverage for a personal injury lawsuit, captioned William Gingerich v. Gerding Builders, LLC dba Gerding Builders, Deerbrook Site Services, Inc. dba Deerbrook Construction, and Does I-V, pending as Cause No. DV-18-232C in the Montana Eighteenth Judicial District, Gallatin County (the "Gingerich Lawsuit").

2. A declaratory judgment is appropriate in this matter because the parties are entitled to have the Court declare their rights and obligations under the subject insurance contracts.  28 U.S.C. § 2201.  Ironshore is currently providing a defense to Gerding Builders, LLC dba Gerding Builders ("Gerding") in the Gingerich Lawsuit.  Midwest has acknowledged it owes a duty to defend Gerding in the Gingerich Lawsuit but has not undertaken Gerding's defense.

3. Through this lawsuit, Ironshore seeks a judgment that the insurance policy it issued to Gerding is excess over the insurance policy Midwest issued to Deerbrook Site Services, Inc. dba Deerbrook Construction ("Deerbrook"), under which Gerding is an additional insured, and that pursuant to the terms of the policies, Midwest is responsible for defending Gerding and Ironshore is entitled to reimbursement from Midwest for all sums expended for Gerding's defense.

## JURISDICTION AND VENUE

4. Plaintiff Ironshore is an Arizona corporation with its principal place of

business in Massachusetts. Ironshore is authorized to transact insurance in the state of Montana.

5. Defendant Midwest is a Minnesota corporation with its principal place of business in Iowa. Midwest is authorized to transact insurance in the state of Montana.

6. This declaratory judgment action arises from the terms of an insurance policy with limits exceeding $75,000.00.

7. The damages sought in the underlying action, and the amount incurred by Ironshore in defending Gerding to date, exceeds $75,000.00 excluding interest and costs. Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1332, as the amount in controversy exceeds the sum of $75,000.00 excluding interest and costs, and there is complete diversity of citizenship between the parties.

8. Venue for this action is proper in the Butte Division of this Court pursuant to Mont. Code Ann. § 25-2-121(1)(b)(ii) and (2)(c) because this lawsuit arises from insurance contracts and the loss or injury occurred in Gallatin County, Montana.

## FACTS

**I. Subcontract Agreement**

9. In November 2014, Gerding subcontracted with Deerbrook to perform framing work on the Stadium View Apartments in Bozeman, Montana. A copy of

the Subcontract between Gerding and Deerbrook, dated November 24, 2014, is attached as **Exhibit A**. The Subcontract provided as follows:

9.1 INDEMNITY

> 9.1.1 INDEMNITY To the fullest extent permitted by law, the Subcontractor shall indemnify and hold harmless the Constructor […] from all claims for bodily injury and property damage […] that may arise from the performance of the Subcontract Work, including reasonable attorneys' fees, costs, and expenses, that arise from the performance of the Work, due to negligent acts or omissions of the Subcontractor, the Subcontractor's subcontractors, or anyone employed directly or indirectly by any of them or by anyone for whose acts any of them may be liable.
>
> * * *
>
> 9.1.3 INSURANCE FOR INDEMNITY Subcontractor shall procure, pay for and thereafter maintain such general liability, contractual liability, and employer's liability insurance (including endorsements) as will insure the provisions of this Article and other contractual indemnities assumed by Subcontractor in this Agreement to the fullest extent insurable, but not less than the coverage and limits specified in Article 9.2.
>
> * * *

9.2 INSURANCE

> 9.2.1 SUBCONTRACTOR'S INSURANCE Before commencing the Subcontract Work, and as a condition precedent to payment, the Subcontractor shall purchase and maintain insurance that will protect it from the claims arising out of its operations under this Agreement, whether the operations are by the Subcontractor, or any of its consultants or subcontractors or anyone directly or indirectly employed by any of them for whose acts the Subcontractor may be liable.
>
> * * *

> 9.2.11 ADDITIONAL NAMED INSURED Subcontractor shall endorse its Commercial General Liability […] to add Constructor and Owner as Additional Insured on a primary and non contributory basis for both ongoing and completed operations, and to contain severability of interest clauses, all with respect to potential liability arising out of (a) operations performed for Constructor or Owner by Subcontractor, (b) acts or omissions of Constructor or Owner in connection with general supervision of Subcontractor's operations, (c) completed operations of Subcontractor, and (d) claims for bodily injury and/or death brought against Constructor or Owner by Subcontractor's employees, or the employees of Subcontractor's subcontractors of any tier, however caused, related to the performance of operations or related to completed operations under the Subcontract Documents.  […] Such insurance afforded to Constructor and Owner as Additional Insureds under Subcontractor's policies shall be primary insurance and not excess over, or contributing with, any insurance purchased or maintained by Constructor or Owner, and Constructor's and Owner's insurance will be excess of all applicable underlying and collectible insurance required in this Section.  The obligations arising under this Subsection, including the duty to defend, shall apply regardless of Subcontractor's or its carrier's right to indemnity, contribution or subrogation.

## II.   The Applicable Insurance Policies

10.   Deerbrook was insured under Policy No. ACMT0560104425 issued by Midwest, effective January 1, 2015, to January 1, 2016 ("Midwest Policy").  A copy of the Midwest Policy is attached as **Exhibit B**.

11.   The Midwest Policy contains endorsement MFMAC011 08-14 entitled "Blanket Additional Insured" which provides:

> A.   Commercial Liability Coverages – Additional Definitions 7. Insured-- is amended to include as an insured any person or

>organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability arising out of your ongoing operations performed for that insured. A person's or organization's status as an insured under this endorsement ends when your operations for that insured are completed.

12. The Midwest Policy provides that if its insurance coverage is primary, "[t]he amount of [Midwest's] liability is not reduced because of other insurance which applies to the loss on other than a primary basis." **Exhibit B**, Commercial Liability Conditions, p. 11.

13. Gerding was insured under Policy No. AGS0022002 issued by Ironshore, effective March 21, 2014, to March 21, 2015 ("Ironshore Policy"). A copy of the Ironshore Policy is attached as **Exhibit C**.

14. The Ironshore Policy provides that it is "excess over…[a]ny other primary insurance available to [Gerding] covering liability for damages arising out of the premises or operations, or the products and completed operations, for which [Gerding] ha[s] been added as an additional insured by attachment of an endorsement." **Exhibit C**, Commercial General Liability Conditions, p. 11 of 15.

15. The Ironshore Policy further provides that "[w]hen this insurance is excess, we will have no duty under Coverages A or B to defend [Gerding] against any 'suit' if any other insurer has a duty to defend [Gerding] against that 'suit'. If

no other insurer defends, we will undertake to do so, but we will be entitled to [Gerding's] rights against all those other insurers." **Exhibit C**, Commercial General Liability Conditions, p. 11 of 15.

### III.    Tender of Underlying Claim and Lawsuit

16.    On June 16, 2016, Gerding's counsel advised Midwest that he represented Gerding with respect to Gingerich's claim and potential lawsuit related to "the March 4, 2015 accident," and tendered Gerding's defense and indemnity to Midwest.

17.    Midwest declined to accept Gerding's tender, which was communicated in a letter to Gerding's counsel dated October 14, 2016.

18.    On December 9, 2016, Gerding's counsel requested that Midwest reconsider its position and accept Gerding's defense and indemnity without reservation.

19.    In a letter dated December 30, 2016, Midwest acknowledged a potential duty to defend Gerding in the event Gingerich filed a complaint, and advised that it had elected to undertake Gerding's defense subject to a full reservation of rights and would assign the defense to Scott Gratton at the Brown Law Firm.  Midwest further advised that its reservation was based upon its understanding that, under Montana law, Gerding remains liable for its own negligence and that the Gerding/Deerbrook contract imposed upon Gerding a non-

delegable duty to assure safety over the worksite. Midwest specifically reserved its right to deny coverage to Gerding "for liability arising out of Gerding's failure to assure safety over the worksite."

20. On April 19, 2017, Gerding's counsel advised Midwest that a conflict of interest existed precluding Mr. Gratton from representing both Gerding and Deerbrook with respect to Gingerich's claims, and proposed that Midwest assume responsibility for funding Gerding's independent counsel pending a future determination of coverage.

21. Midwest did not respond to the April 19, 2017 letter from Gerding's counsel.

22. On March 2, 2018, the Gingerich Lawsuit was filed against Gerding and Deerbrook. A copy of the Complaint filed in the Gingerich Lawsuit is attached as **Exhibit D**.

23. While Gingerich's allegations are disputed by Gerding, Ironshore, Deerbrook and Midwest, the Gingerich Lawsuit alleges as follows:

    a.    In March of 2015, Gerding was acting as the general contractor to construct the Stadium View Apartments in Bozeman, Montana. See Gingerich Complaint (**Exhibit D**), ¶ 1. Deerbrook was acting as a contractor for Gerding to frame Building 8 in the Stadium View Apartments. *Id*. at ¶ 2.

      Gingerich was acting as a contractor for Deerbrook to assist in the framing of Building 8.  *Id*. at ¶ 8.

b.   On or about March 3, 2015, Cory Benge, owner and operator of Deerbrook, instructed his employees to install the safety guardrail on the west side of Building 8.  *Id*. at ¶ 10.

c.   Deerbrook and the other Defendants were responsible for insuring fall protection for workers working on the Stadium View Apartments, and for constructing the safety guardrail to OSHA standards.  *Id*. at ¶¶ 13-14.

d.   On March 4, 2015, Gingerich was working on the second floor of Building 8 and leaned against the safety guardrail while attempting to communicate with a forklift operator.  The safety guardrail failed, causing him to fall to the ground and sustain injuries and damages.  *Id*. at ¶¶ 16-23, 26-27.

e.   The safety guardrail did not meet OSHA requirements and did not provide reasonable fall protection for Gingerich.  *Id*. at ¶¶ 29-31.

f.   Deerbrook and the other Defendants did not provide reasonably safe fall protection and/or violated OSHA or similar rules,

       regulations and/or laws regarding fall protection for workers such as Gingerich. *Id*. at ¶ 28.

  g.  Deerbrook and the other Defendants did not provide Gingerich with a reasonably safe place to work; negligently violated common law duties, statutes, regulations, ordinances and/or other laws designed to protect people such as Gingerich; and are vicariously and/or jointly and severally liable for Gingerich's damages. *Id*. at ¶¶ 32-34.

  h.  The negligence of Deerbrook and the other Defendants caused damages to Gingerich. *Id*. at ¶ 35.

  i.  Gingerich seeks all damages recoverable under Montana law, including but not limited to economic and non-economic damages, plus costs and interest. *Id*. at p. 5, ¶¶ 1-2.

24. Gerding subsequently filed a Cross-Claim against Deerbrook, alleging that Deerbrook is liable for all or part of the damages Gingerich seeks to recover from Gerding in the Gingerich Lawsuit. A copy of Gerding's Cross-Claim against Deerbrook is attached as **Exhibit E**.

25. Deerbrook also filed a Cross-Claim against Gerding, alleging that Gerding is liable for all or part of the damages Gingerich seeks to recover from Deerbrook in the Gingerich Lawsuit. A copy of Deerbrook's Answer and Cross-

Claim against Gerding is attached as **Exhibit F**.

26. Gerding's and Deerbrook's interests are directly adverse given the nature of the allegations and claims Gingerich has asserted against them, as well as Gerding's and Deerbrook's respective cross-claims asserted in the Gingerich Lawsuit.

27. Ironshore is providing Gerding with a defense in the Gingerich Lawsuit.

28. Midwest is providing Deerbrook with a defense in the Gingerich Lawsuit.

29. On June 15, 2018, Gerding's counsel provided Midwest with a copy of the Complaint filed in the Gingerich Lawsuit, and requested that Midwest either provide separate counsel for Gerding or accept Gerding's defense without reservation.

30. Midwest has not responded to the June 15, 2018 letter from Gerding's counsel or acknowledged that a conflict of interest exists between Gerding and Deerbrook.

31. Midwest has a duty to defend Gerding in the Gingerich Lawsuit, which requires the provision of independent counsel due to the conflict of interest that exists between Gerding and Deerbrook.

32. An actual controversy exists regarding whether Midwest is obligated

to provide independent counsel to Gerding in the Gingerich Lawsuit due to the conflict of interest that exists between Gerding and Deerbrook.

33. An actual controversy exists regarding whether Midwest is obligated to reimburse Ironshore for the attorney's fees and costs it has incurred in the investigation and defense of Gerding in the Gingerich Lawsuit to date, and until such time as Midwest provides a defense to Gerding.

## REQUEST FOR RELIEF

Ironshore requests the following relief:

1. A declaration that Midwest is obligated to provide independent counsel to Gerding in the Gingerich Lawsuit due to the conflict of interest that exists between Gerding and Deerbrook;

2. A declaration that Midwest is obligated to reimburse Ironshore for the attorney's fees and costs it has incurred in the investigation and defense of Gerding in the Gingerich Lawsuit to date, and until such time as Midwest provides a defense to Gerding;

3. That Ironshore be awarded its costs of suit; and

4. For such other and further relief as the Court deems necessary or proper.

DATED this 15th day of April, 2019.

**MATOVICH, KELLER & HUSO, P.C.**

By: /s/ Katherine S. Huso
Katherine S. Huso
Ryan J. Gustafson
*Attorney for Plaintiff*